**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TYSHAUN MOSLEY,

                              Plaintiff,

       - v -                                                           Civ. No. 9:11-CV-1490
                                                                                (DNH/RFT)

P. WOODLY,[1] *Correction Captain, Clinton Correctional Facility*, K. MATTOT,[2] *Correction Sergeant, Clinton Correctional Facility,* P. FESSETTE, *Correction Sergeant, Clinton Correctional Facility*, M. GUYNUP, *Correction Sergeant, Clinton Correctional Facility*, W. LECLAIR, *Correction Officer, Clinton Correctional Facility*, JOHN DOE, *Correction Officer, Clinton Correctional Facility,*

                              Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

**TYSHAUN MOSELY**
Plaintiff, *Pro Se*
09-A-1628
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, NY 14411

**ERIC T. SCHNEIDERMAN, ESQ.**                     **ROGER W. KINSEY, ESQ.**
Attorney General of the State of New York           Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

---

[1] The correct spelling of this Defendant's name is "Woodruff" and the Court will reference him accordingly. Dkt. Nos. 14 & 23.

[2] The correct spelling of this Defendant's name is "Matott" and the Court will reference him accordingly. Dkt. Nos. 14 & 23.

**REPORT-RECOMMENDATION and ORDER**

*Pro se* Plaintiff Tyshaun Mosely brings this action, pursuant to 42 U.S.C. § 1983, alleging that Defendants (1) used excessive force upon him, (2) failed to protect him from the use of excessive force, (3) were deliberately indifferent to his serious medical needs, and (4) deprived him of due process at a prison disciplinary hearing. *See generally* Dkt. No. 1, Compl.[3] Defendants now move for Summary Judgment. Dkt. No. 23. Plaintiff opposes the Motion. Dkt. No. 29. For the reasons that follow, we recommend that Defendants' Motion be **GRANTED** in part, and **DENIED** in part.

## I. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [FED. R. CIV. P. 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts

---

[3] Plaintiff submitted a *pro forma* Complaint wherein he referred to an attached type written Complaint, both containing numbered paragraphs. *See* Dkt. No. 1. To avoid confusion we cite to the paragraphs enumerated in the Attached Complaint.

showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## II. DISCUSSION

### A. Background

Except where noted, the following facts are undisputed.

On August 19, 2011, a fight involving dozens of inmates erupted in the main yard at Clinton Correctional Facility ("CCF"). Dkt. No. 23-1, Defs.' Statement Pursuant to Rule 7.1(a)(3) (hereinafter "Defs.' 7.1 Statement"), at ¶ 1. To regain control of the yard, correction officers fired multiple gunshots and ordered all inmates to lay down on the ground. *Id.* at ¶¶ 2 & 3. Officers then separated the inmates in the yard into three groups, those who were actively involved in or close to the fighting, those on the fringe of the fighting, and those who were not near the fighting but were in the yard. *Id.* at ¶¶ 3–6.[4] Defendants claim that Plaintiff was amongst those inmates that were involved in or very near to the fighting. *Id.* at ¶¶ 16 & 22. Plaintiff disputes this claim. *See* Dkt. No. 23-4, Michael Guynup Decl., dated Aug. 23, 2012, Ex. D., Disciplinary Hr'g Tr., dated Aug. 26, 2011, at pp. 14–17.

After the melee ended, the inmates were removed from the yard and taken to the gymnasium where each inmate, including Plaintiff, was examined by the medical unit and photographed before being taken to their cells. Defs.' 7.1 Statement at ¶¶ 7–9. Plaintiff claims that while being transported from the main yard to the gymnasium, and while handcuffed behind his back, Defendants LeClair and Doe, "repeatedly punched and kicked [him] in the head, face and stomach." Compl. at ¶¶ 12–13. And that, once inside the gymnasium, in the presence of Defendants Matott, Fessette, and Guynup, "LeClair slapped [Plaintiff] across the face multiple times. . . . [and] several

---

[4] Defendants have submitted surveillance footage depicting the melee in the yard, as well as the removal of inmates from the yard. *See, e.g.,* Dkt. No 23-4, Michael Guynup Decl., dated Aug. 23, 2012, at Ex. A. However, the quality of the video is such that neither Plaintiff nor Defendants can be clearly identified, and thus is not helpful in resolving the parties' materially divergent factual accounts.

officers began punching and slapping [him] on the head and face. Others kicked [him] in the stomach and back." *Id.* at ¶¶ 14–16. Defendants deny that any such abuse occurred or that Defendants Matott, Fessette, or Guynup witnessed such abuse. *See e.g.* Defs.' 7.1 Statement at ¶¶ 12–13. Defendants also allege that Plaintiff neither reported any injuries, nor requested any medical attention after the incident. *Id.* at ¶¶ 10–11 & 14. Contrariwise, Plaintiff claims he suffered back pain as a result of the incident, but did not report it because he "was intimidated by the officials not to report any injuries . . . to the medical staff." Compl. at ¶¶ 17 & 19.

Misbehavior reports were issued to those inmates involved in the fight, and Defendant Woodruff was temporarily assigned to CCF to conduct disciplinary hearings. Defs.' 7.1 Statement at ¶¶ 15, 17, & 19. After hearing the testimony of Defendant Sgt. Guynup and viewing the video of the melee, Plaintiff was found guilty and sentenced to eighteen-months confinement in a Special Housing Unit ("SHU") and a recommendation that he lose twelve-months[5] of good time credit. *Id.* at ¶¶ 24. Plaintiff was released from SHU sixty-seven days later after the disciplinary decision was reversed on appeal and expunged. *Id.* at ¶¶ 25 & 26.

### B. John Doe

Plaintiff named a John Doe Defendant in his Complaint. *See generally* Compl. However, to date, and despite being reminded by this Court,[6] Plaintiff has failed to ascertain the true identify of the Doe Defendant. Under FED. R. CIV. P. 4(c)(1) and 4(m), the plaintiff is responsible for service

---

[5] There appears to be some confusion over he amount of good time credit Plaintiff lost as a result of the hearing. *Compare* Defs.' 7.1 Statement at ¶ 24, *with* Compl. at ¶ 27. However, it is clear from the transcript of Plaintiff's disciplinary hearing that the recommendation was for the loss of twelve-months of good time credit. Guynup Decl., Ex. D, Disciplinary Hr'g Tr. at p. 23.

[6] On January 27, 2012, this Court specifically reminded Plaintiff of his obligation to ascertain the true identity of, and serve the Doe Defendant Dkt. No. 6, Dec. and Order, dated Jan. 27, 2012, at p. 2.

of the summons and complaint for each defendant within 120 days of the filing of the complaint.[7] Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant. *Id.* at 4(m). Here, Plaintiff had 120-days from December 10, 2011 – the day he filed his Complaint – or, until April 9, 2012, to timely name and serve the Doe Defendant. Given Plaintiff's failure to do so, we recommend that the Doe Defendant be **DISMISSED.**

## C. Deliberate Medical Indifference

Plaintiff alleges that Defendants Matott, Fessette, Guynup, and LeClair denied him access to medical care in violation of the Eighth Amendment. Compl. at ¶ 34. Defendants argue that Plaintiff has failed to state an Eighth Amendment medical indifference claim because he has not alleged a sufficiently serious underlying medical condition. Defs.' Mem. of Law at pp. 9–10. We agree, and therefore, we recommend that Defendants' Motion be **GRANTED** as to this claim.

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals' daily

---

[7] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L.R. 4.1(b)

activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer v. Brennan*). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102, 105–06 (1976)).

Here, Petitioner claims that since the time of the alleged assault he has suffered "back pains." Compl. at ¶ 17. Courts have found chronic, debilitating back pain to be a serious injury for Eighth Amendment purposes. *See Jordan v. Rabinowitz*, 2010 WL 4810229, at \*6 (N.D.N.Y. Aug. 24, 2010) (collecting cases for the proposition that severe long-lasting back pain constitutes a serious medical need); *see also Rodriguez v. Smith*, 2011 WL 4479689, at \*5 (N.D.N.Y. Aug. 19, 2011) (collecting cases). However, unlike the plaintiffs in those cases, Mosely's complaints are unaccompanied by any medical diagnosis of a degenerative or chronic spinal condition, history of complaints of pain and suffering, or allegations that his condition has, in any meaningful way, interfered with his ability to go about his daily activities. *See Chance v. Armstrong*, 143 F.3d at 702.

Thus, Plaintiff's "back pains" are not sufficiently serious for purposes of an Eighth Amendment medical indifference claim.[8] Therefore, we recommend that Defendants' Motion be **GRANTED** as to this claim.

### D. Excessive Force

Plaintiff next claims that Defendant LeClair used excessive force against him. Compl. at ¶ 32. Defendants argue, *inter alia*, that Plaintiff has failed to state a cause of action because his injuries are not sufficiently serious. Dkt. No. 23-2, Defs.' Mem. of Law, at pp. 6–10. We disagree and therefore recommend Defendants' Motion be **DENIED** as to this claim.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003)). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court clarified the standards for determining whether an Eighth Amendment violation occurred in the context of excessive force. Specifically, the Court stated that, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6-7 (quoted in *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994)). To validly assert a violation of

---

[8] Plaintiff maintains that there is no medical diagnosis or history of complaints regarding his back pain because he was "intimidated by the officials" not to report any pain or injury. *Id.* at ¶ 19. In addition to the fact that Plaintiff fails to name the "officials" that allegedly intimidated him, or describe the form or manner of the intimidation, here, even if Plaintiff had reported his "back pains," the outcome would have been the same because such an injury is not sufficiently serious for purposes of the Eighth Amendment. Additionally, Plaintiff also claims that he was denied a sick call request on August 20, 2011. Dkt. No. 29, Pl.'s Decl. in Opp'n, dated Nov. 18, 2012, at ¶ 13. However, once again, Plaintiff does not allege who he filed the request with, or that one of the named Defendants was responsible for denying it. Genuine issues of material fact are not raised by such vague and conclusory allegations. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

the Eighth Amendment through the use of excessive force, an inmate must prove two components: (1) objectively, that the defendant's actions violated "contemporary standards of decency," and (2) subjectively, that the defendant acted wantonly and in bad faith. *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotation marks and citations omitted).

Regarding the objective element, we note initially that "a *de minimis* use of force will rarely suffice to state a constitutional claim[.]" *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). In that respect, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (quoted in *Hudson v. McMillian*, 503 U.S. at 10). However, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se* because in such instances "contemporary standards of decency always are violated." *Blyden v. Mancusi*, 186 F.3d at 263 (citing *Hudson v. McMillian*, 503 U.S. at 9). For example, "when a prison guard applies force against a prisoner that poses no reasonable threat simply because the guard loses his or her temper and wishes to wantonly inflict pain on the prisoner, a per se violation of the Eighth Amendment occurs." *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 216 (N.D.N.Y. 2001) (citation omitted).

With regard to the subjective component, a court should consider whether the defendant had a wanton state of mind when engaging in the alleged misconduct. To determine whether a defendant acted wantonly or maliciously, several factors should be examined, including

> the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by defendants to temper the severity of a forceful response.

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted); *see also Hudson v. McMillian*, 503 U.S. at 7).

Although we agree with Defendants that Plaintiff's alleged injury, "back pains," appears to

be *de minimis*, our inquiry does not end there. Although the court should consider the seriousness of the injury in assessing the objective element, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury;" thus, "the seriousness of the injury is relevant to the Eight Amendment inquiry, but does not end it." *Davidson v. Flynn*, 32 F.3d at 29–30 n.1 (alterations in original) (quoting *Hudson v. McMillian*, 503 U.S. at 4). Moreover, if Plaintiff's claims that he was kicked, punched, and slapped in the face, stomach, head, and back while handcuffed behind his back and not presenting any particular threat to Defendant LeClair are found credible, a reasonable juror could conclude that the application of force in this case was not made in a good faith effort to maintain control or restore order, but rather with the sole purpose of causing harm. *See Hudson v. McMillian*, 503 U.S. at 6–7. Accordingly, because issues of material fact remain as to whether or not such acts did indeed occur, we recommend that Defendants' Motion be **DENIED**.

### E. Failure to Protect

Plaintiff further claims that Defendants Matott, Fessette, and Guynup, were present when such force was used, yet none of these Defendants intervened on Plaintiff's behalf. Compl. at ¶¶ 14–16 & 33. Defendants argue that these officers were neither present in the gymnasium nor witnessed any such abuse. Defs.' Mem. of Law at p. 11. For the reasons that follow we recommend that Defendants' Motion be **DENIED**.

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. at 832-33); *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997) ("Prison officials have a constitutional duty to act reasonably to ensure a safe

environment for a prisoner when they are aware that there is a significant risk of serious injury to that prisoner."); *see also Avincola v. New York State Dep't of Corr. Servs.*, 1998 WL 146280, at *3 (N.D.N.Y. Mar. 27, 1998).

In order to state such a claim based upon the failure to protect, a prisoner must demonstrate that prison officials "acted with deliberate indifference with respect to his safety or with an intent to cause harm to him." *Hendricks v. Coughlin*, 942 F.2d at 113. A showing of mere negligence on behalf of the defendants is not enough to state a constitutional claim. *Whitley v. Albers*, 475 U.S. at 319 (cited in *Hendricks v. Coughlin*, 942 F.2d at 113). The key element of a failure to protect claim is the existence or potential existence of a substantial risk of serious harm, not the actual harm which may or may not ensue. *Farmer v. Brennan*, 511 U.S. at 836. To prove deliberate indifference, the plaintiff must show that the "official [knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837 (cited in *Ramirez v. Mantello*, 1998 WL 146246, at *2 (N.D.N.Y. Mar. 24, 1998)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* (emphasis added).

Further, a supervisor can be held liable when he or she has actual or constructive notice of unconstitutional practices, but similarly acted with gross negligence or deliberate indifference in failing to act. *See Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989). "Such a supervisor may not escape the consequences of his or her failure to act by pleading the doctrine of qualified immunity." *Fossett v. Morris*, 1991 WL 67093, at *3 (S.D.N.Y. Apr. 22, 1991).

If Plaintiff's allegations that he was repeatedly struck by corrections officers in the presence of Defendants Matott, Fessette, and Guynup are accepted as true, a reasonable juror could conclude

*-11-*

that these Defendants had both the opportunity and the obligation to intervene on Plaintiff's behalf, and, that they failed to do so. *See Farmer v. Brennan*, 511 U.S. at 836–37. Defendants' claims that they were not present for and did not witness any alleged abuse are insufficient to warrant summary judgment; here Defendants offer only their own hearsay statements and the incident reports they prepared themselves to support their claims.[9] *See, e.g.,* Guynup Decl. at ¶¶ 20-23, 26, & Exs. A & B; Dkt. No 23-8, Paul Fessette Decl., dated Aug. 23, 2012, at ¶¶ 17–20 & 23. Thus, genuine issues of material fact exist regarding whether these Defendants were present in the gymnasium while Plaintiff was allegedly repeatedly struck by other corrections officers. Therefore, we recommend that Defendants' Motion be **DENIED** as to this claim.

### F. Due Process

Plaintiff alleges that he was deprived of due process at his disciplinary hearing and, as a result, wasunfairly convicted and given eighteen-months confinement in SHU and a recommended loss of twelve-months of good time credit. Compl. at ¶ 35. Defendants argue that Plaintiff had no discernable liberty interest and thus has failed to state a due process claim. Defs.' Mem. of Law at pp. 12–15. We agree, and therefore, we recommend that Defendants' Motion be **GRANTED** as to this claim.

The Due Process Clause of the Fourteenth Amendment protects against restraints or conditions of confinement that "exceed[] the sentence in . . . an unexpected manner[.]" *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir.

---

[9] Moreover, at least with regards to Defendants' claim that Defendant Matott was never in the gym, the record evidence suggests otherwise. In a signed incident report prepared by Defendant Matott, he states "after most Inmates on the flats area were taken to the gym I went to the gym." Dkt. No. 23-4, Ex. B, at pp. 68–69, Lt-Mem., dated Aug. 19, 2011.

*-12-*

1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Inmates' liberty interests are derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment; and (2) state statute or regulations. *Id.* With regard to liberty interests arising directly under the Due Process Clause, the Supreme Court has "narrowly circumscribed its scope to protect no more than the 'most basic liberty interests in prisoners[,]'" *Arce v. Walker*, 139 F.3d at 333 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)), and limited to freedom from restraint that "exceed[] the sentence in . . . an unexpected manner[.]" *Sandin v. Conner*, 515 U.S. at 478.

Turning to liberty interests created by the state, the Supreme Court states that such liberty interests shall be limited solely to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. at 484; *see also Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citing *Sandin v. Connor*); *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999).

Factors relevant to an analysis of what constitutes an atypical and significant hardship include "(1) the effect of the confinement on the length of prison incarceration, (2) the extent to which the conditions of segregation differ from other routine prison conditions, and (3) the duration of the disciplinary segregation compared to discretionary confinement." *Spaight v. Cinchon*, 1998 WL 167297, at *5 (N.D.N.Y. Apr. 3, 1998) (citing *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (stating that in assessing what constitutes an atypical and significant hardship, "[b]oth the conditions [of confinement] and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical" (citation omitted)). Though the length of the confinement is one guiding factor in a *Sandin* analysis, the

Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999) (citations omitted).

Here, Plaintiff was sentenced to serve eighteen-months in SHU and it was recommended that he lose twelve-months of good time credit. Disciplinary Hr'g Tr. at p. 23. However, Plaintiff's conviction was later overturned on appeal and Plaintiff was released from SHU after serving only sixty-seven days. Dkt. No. 29, Tyshaun Mosely Decl., dated Nov. 18, 2012, at ¶¶ 18 & 19. The Second Circuit has held that it is the length of the *actual* punishment that is relevant in determining whether a period of SHU confinement implicates a cognizable liberty interest, and, not the length of the sentence imposed. *Scott v. Albury*, 156 F.3d 283, 287–88 (2d Cir. 1998) ("No right to due process is implicated in the prison context *unless* a liberty interest has been deprived, and we read *Sandin* [*v. Conner*] to require that we look to actual punishment in making this determination."). Therefore, the relevant period of confinement for the purposes of our analysis is the sixty-seven days Plaintiff spent in SHU, and not the eighteen-months he was sentenced to by Defendant Woodruff.

Despite the fact that no bright-line rule exists, courts within the Second Circuit have repeatedly found that periods of SHU confinement under **normal conditions** "lasting fewer than 101 days have been found not to amount to [an] atypical and significant hardship." *See Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 606 (S.D.N.Y. 2009) (citing *Sealy v. Giltner*, 197 F.3d 578, 588–90 (2d Cir. 1999)); *see also Edmonson v. Coughlin*, 1996 WL 622626, at *4-5 (W.D.N.Y. Oct. 4, 1996) (citing cases for the proposition that courts within the Second Circuit tend to rule, as a matter of law, that "disciplinary keeplock or SHU confinement to 60 days or less in New York prisons is not an atypical or significant hardship in relation to the ordinary incidents of prison life"); *Alvarado v.*

*Kerrigan*, 152 F. Supp. 2d 350, 355 (S.D.N.Y. 2001) (93 days) (citing *Williams v. Goord*, 111 F. Supp. 2d 280, 289 (S.D.N.Y. July 28, 2000) (75 days confinement); *Jackson v. Johnson*, 15 F. Supp. 2d 341, 361–62 (S.D.N.Y. 1998) (99 days); *Trice v. Clark*, 1996 WL 257578, at *3 (S.D.N.Y. May 16, 1996) (150 days)). That is not to say that any period of confinement that does not last longer than 101 days cannot be atypical. *See Palmer v. Richards*, 364 F.3d at 65 (noting that SHU confinements of less than 101 days could constitute atypical and significant hardships if the conditions were more severe than the "normal SHU conditions"). Here, the record is completely devoid of any evidence that the SHU conditions Plaintiff experienced during his sixty-seven day confinement differed from the ordinary incidents of prison life as experienced by other SHU or general population inmates. Thus, the sixty-seven days Plaintiff served in SHU did not implicate a cognizable liberty interest.

Therefore, we recommend that Defendants' Motion be **GRANTED** as to this claim.

### G. Eleventh Amendment Immunity

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'" *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)). Thus, sovereign immunity

provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. at 98-101; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796 (N.D.N.Y. 1984). To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs.* 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073 (1994); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

However, whether state officials sued in their official capacities are entitled to Eleventh Amendment immunity depends also upon the relief sought in the complaint. The Second Circuit has held that in accordance with *Ex parte Young*, 209 U.S. 123 (1908), "acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be subject of injunctive or declaratory relief in federal court." *Berman Enters., Inc. v. Jorling,* 3 F.3d at 606 (citations omitted); *see also Rourke v. New York State Dep't of Corr. Servs.*, 915 F. Supp. at 540.

Here, Plaintiff has not requested any injunctive relief against the individual Defendants in their personal or official capacities. Therefore, because Plaintiff has requested only monetary relief, we recommend that Defendants' Motion for Summary Judgment be **GRANTED** as to Plaintiff's claims against Defendants in their official capacities.

### H. Qualified Immunity

Defendants claim that Defendant Woodruff is entitled to qualified immunity for his role as hearing officer at Plaintiff's disciplinary hearing. However, as we have found no due process violation, we need not, and do not, consider this argument. *See supra* Part II.F.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 23) be **GRANTED** in part, and **DENIED** in part, as follows:

1. **DENIED** as to Plaintiff's excessive force claim against Defendant LeClair;
2. **DENIED** as to Plaintiff's failure to protect claim against Defendants Matott, Fessette, and Guynup;
3. **GRANTED** as to Plaintiff's deliberate medical indifference claim against Defendants Matott, Fessette, Guynup, and LeClair;
4. **GRANTED** as to Plaintiff's due process claim against Defendant Woodruff;
5. **GRANTED** as to Plaintiff's claims against Defendants in their official capacities; and it is further

**RECOMMENDED,** that Defendant John Doe be **DISMISSED** from this action as a result of Plaintiff's failure to timely identify and serve him; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: August 29, 2013
      Albany, New York

Randolph F. Treece
U.S. Magistrate Judge